## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PRENTICE EUGENE PONDS, II,     ) | |
|     ) | |
|     Petitioner,     ) | |
|     ) | |
| v.     ) | Case No. 21-CV-0104-CVE-CDL |
|     ) | |
| RANDY HARDING, Warden,[1]     ) | |
|     ) | |
|     Respondent.     ) | |

## OPINION AND ORDER

Petitioner Prentice Eugene Ponds, II, a state prisoner appearing through counsel, brings this action pursuant to 28 U.S.C. § 2254, seeking federal habeas relief from the judgment entered against him in the District Court of Tulsa County, Case No. CF-2016-2270. Dkt. # 1. Respondent Randy Harding has filed a response (Dkt. # 8) in opposition to the petition, as well as the state-court record (Dkt. # 9), and Ponds has submitted a reply (Dkt. # 16). Having considered the parties' arguments and the relevant record, the Court denies the petition.[2]

---

[1] Ponds presently is incarcerated at the Dick Conner Correctional Center, in Hominy, Oklahoma. The Court therefore substitutes Dick Conner Correctional Center's current warden, Randy Harding, in the place of Scott Crow, as party respondent. See Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts.

[2] Ponds requests that the Court conduct an evidentiary hearing. Dkt. # 1, at 32. A habeas petitioner may obtain an evidentiary hearing by "(1) showing he was diligent in developing the factual basis for his claim in state court . . . , and (2) asserting a factual basis that, if true, would entitle him to habeas relief." Boyle v. McKune, 544 F.3d 1132, 1135 (10th Cir. 2008). "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro v. Landrigan, 550 U.S. 465, 474 (2007). Ponds does not state in his request which factual assertions, or even which claims, necessitate the hearing. See Hooks v. Workman, 606 F.3d 715, 731 (10th Cir. 2010) (holding that "the general and conclusory nature of the allegations in [the petitioner's] request for an evidentiary hearing" supported its denial). Further, having reviewed Ponds's claims, the Court discerns no factual allegation that is unrefuted by the record and that, if true, would allow Ponds to prevail. Accordingly, Ponds's request for an evidentiary hearing is denied.

I.   BACKGROUND

Ponds was convicted by a jury in 2017 of robbery by force or fear, in violation of OKLA. STAT. tit. 21, § 791 (Count 1), and fraudulent insurance claim, in violation of OKLA. STAT. tit. 21, § 1662 (Count 2), both after two or more prior felony convictions.  Dkt. # 9-10, at 84, 89.[3]  The trial court sentenced Ponds, in accordance with the jury's recommendation, to life imprisonment as to Count 1 and twenty-five years' imprisonment as to Count 2, with the sentences running consecutively.  Id.  Ponds, through counsel, directly appealed his judgment and sentence to the Oklahoma Court of Criminal Appeals (OCCA), alleging that (1) the trial judge's employment history created an appearance of impropriety that required the judge to recuse, (2) the state violated his right to present a defense by preventing a critical witness from testifying, (3) trial counsel failed to provide effective assistance, (4) the trial court erred in failing to give a "stand your ground" instruction, (5) his life sentence is excessive, (6) the state failed to prove all elements of robbery by force or fear, (7) the trial court erred in failing to give a "self-defense" instruction, and (8) the state violated his "14th Amendment right by not properly instructing the jury as to the law."  Dkt. # 8-1, at 2-3.  The OCCA denied relief on August 9, 2018.  Dkt. # 8-4.

Ponds subsequently filed in state court a pro se application for postconviction relief, claiming that (1) he was arrested without probable cause, (2) a juror who was not proficient in English was not qualified to serve on the jury, (3) the prosecutor committed misconduct during trial, and (4) appellate counsel performed deficiently in Ponds's direct appeal proceedings.  Dkt. # 8-5, at 2-18.  The state district court denied relief on March 28, 2019.  Dkt. # 8-6.  Ponds appealed, and the OCCA affirmed the denial of relief on June 25, 2019.  Dkt. # 8-9.  On December 12, 2019, Ponds made contemporaneous filings of a second application for postconviction relief in state court

---

[3] The Court's citations refer to the CM/ECF header pagination.

and a federal habeas petition in this Court.  Dkt. # 8-10; see Petition, Ponds v. Crow, No. 19-CV-0678-JED-JFJ (N.D. Okla. Dec. 12, 2019), Dkt. # 2.  In his second application for postconviction relief, Ponds alleged that appellate counsel was ineffective (1) due to counsel's illness during the pendency of the appeal, and for failing to raise claims regarding (2) the allegedly unqualified juror, (3) trial counsel's failure to request an 85% rule jury instruction, (4) "trial counsel's failure to move to strike the admission of a judgment and sentence to show an after-former conviction despite two counts being entirely transactional," (5) trial counsel's and the trial court's failure to consider the admission of two allegedly exculpatory photographs, (6) trial counsel's failure to move to exclude a 1991 judgment and sentence document introduced at the preliminary hearing without a certified copy, (7) an allegedly unknowing and involuntary confession, (8) trial counsel's failure to challenge the confession, (9) the sufficiency of the evidence as to Count 2, the insurance fraud charge, (10) trial counsel's failure to make certain objections based on alleged hearsay, speculation, lack of proper foundation, and "evidence of burden-shifting," (11) trial counsel's failure to object to the introduction of allegedly unwarned custodial statements, (12) trial counsel's failure to challenge alleged prosecutorial misconduct, (13) the need for an evidentiary hearing on appeal, and (14) trial counsel's failure to properly voir dire the allegedly unqualified juror.  Dkt. # 8-10, at 6-8.

Because Ponds's December 12, 2019, habeas petition contained unexhausted claims then pending in Ponds's second application for postconviction relief, the Court dismissed Ponds's petition without prejudice for failure to exhaust available state-court remedies, such that Ponds again could seek habeas relief following the conclusion of his state postconviction proceeding.  See Opinion and Order, Ponds v. Crow, No. 19-CV-0678-JED-JFJ (N.D. Okla. July 21, 2020), Dkt. # 7.  The state district court denied Ponds's second application for postconviction relief on

3

February 11, 2020, on the basis that the claims were procedurally barred under Oklahoma's Post-Conviction Procedure Act, OKLA. STAT. tit. 22, §§ 1086-89. Dkt. # 8-11. Ponds appealed, and the OCCA affirmed the denial of relief on December 8, 2020. Dkt. # 8-13; Dkt. # 8-14. On March 8, 2021, Ponds filed the instant petition for federal habeas relief under 28 U.S.C. § 2254. Dkt. # 1.

Respondent submits that Ponds has not demonstrated entitlement to relief under § 2254(d)'s deferential standard, as to the claims considered on their merits in state court. Respondent argues that the remaining claims either are not cognizable on federal habeas review, were procedurally defaulted in state court, or are subject to an anticipatory procedural bar. The Court considers each of these arguments in turn.

II.    CLAIMS ADJUDICATED ON THE MERITS IN STATE COURT

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal citations and quotation marks omitted). When a claim has been "adjudicated on the merits in State court proceedings," federal habeas relief may be granted under the AEDPA only if the state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

Clearly established federal law "refers to the holdings, as opposed to the dicta, of the [Supreme] Court's decisions as of the time of the relevant state-court decision." Dodd v. Trammell, 753 F.3d 971, 982 (10th Cir. 2013) (quoting Terry Williams v. Taylor, 529 U.S. 362, 412 (2000)). A state-court decision is "contrary to" clearly established federal law if the

4

conclusion reached by the state court is "opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts." Id. (alterations in original) (quoting Terry Williams, 529 U.S. at 413). A state-court decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. (alteration in original) (quoting Terry Williams, 529 U.S. at 413). "[A]n unreasonable application of federal law is different from an incorrect application of federal law. Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Renico, 559 U.S. at 773 (emphases in original) (citations and internal quotation marks omitted). Rather, "[a]s a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

A.   Sufficiency of the Evidence

Ponds challenges the sufficiency of the evidence supporting his conviction of robbery by force or fear. *See* Dkt. # 1, at 33, 37 (Ground I(D)(1)). Ponds first raised a claim of insufficient evidence for his conviction on Count 1 on direct appeal, which the OCCA denied on the merits:

> In Proposition VI, we review [Ponds's] challenge to the sufficiency of the evidence to support his conviction in Count I in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. Davis v. State, 2011 OK CR 29, ¶ 74, 268 P.3d 86, 111. This Court will accept all reasonable inferences and credibility choices that tend to support the verdict. Id. It is the exclusive province of the trier of fact to weigh the evidence and determine the facts. See Rutan v. State, 2009 OK CR 3, ¶ 49, 202 P.3d 839, 849.

[Ponds's] use of physical violence upon the victim to take away personal property of the victim, from the victim's immediate presence, was sufficient to support a conviction for Robbery by Force or Fear.  See Lay v. State, 1988 OK CR 60, ¶ 14, 752 P.2d 823, 826 ("[t]o constitute robbery, the force or fear must be employed either to obtain or retain possession of the property, or to prevent or overcome resistance to the taking"); Rounds v. State, 1984 OK CR 49, ¶ 17, 679 P.2d 283, 286 ("[r]obbery is the wrongful taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear["]). The evidence was sufficient to support the conviction. This proposition is denied.

Dkt. # 8-4, at 15-16.

When reviewing the sufficiency of the evidence supporting a state criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  The reviewing court "consider[s] all of the evidence, direct and circumstantial, along with reasonable inferences," but does not "weigh the evidence or consider the relative credibility of witnesses."  United States v. Griffith, 928 F.3d 855, 868-69 (10th Cir. 2019) (quoting United States v. Pickel, 863 F.3d 1240, 1251 (10th Cir. 2017)).  "In considering the OCCA's application of the Jackson sufficiency of the evidence standard, [this Court] appl[ies] Oklahoma law regarding the substantive elements of the offense."  Torres v. Mullin, 317 F.3d 1145, 1152 (10th Cir. 2003).  Under Oklahoma law, the crime of robbery by force or fear contains the following elements: (1) wrongful, (2) taking, (3) carrying away, (4) personal property, (5) of another, (6) from the person or immediate presence of another, (7) by force or fear.  Okla. Unif. Jury Instr. CR 4-142; see OKLA. STAT. tit. 21, § 791; Dkt. # 9-9, at 136.

The jury was presented with the following evidence at trial.  Ponds purchased a 2014 Camaro on eBay on May 5, 2015.  Dkt. # 9-2, at 184; Dkt. # 9-4, at 25.  On May 23, 2015, Ponds

filed an insurance claim with Repwest Insurance Company, claiming a U-Haul truck backed into his vehicle, causing damage.  Dkt. # 9-2, at 166-67, 175-77.  Ponds included in his claim six photographs of the damage purportedly caused by the U-Haul truck.  Id. at 179-80.  Insurance investigators viewed photographs of the vehicle from the eBay advertisement and determined the damage depicted in the eBay photographs matched the damage present in the photographs submitted by Ponds.  Id. at 184-85, 213-14.  Investigators also noted that the car had already been salvaged and was a "total loss" when sold on eBay, which they viewed as a red flag.  Id. at 186-87.  The case was referred to an independent investigator, Mark Frayne, for further investigation.  Id. at 198-99.

Frayne testified that he arrived at Ponds's home on June 10, 2015, to interview Ponds regarding the claim.  Id. at 203, 205-06.  Frayne had with him a camera, a tape recorder, and his file material, including the eBay photographs.  Id. at 206-07.  They entered the home through the garage, which allowed Frayne to view the damage to the vehicle.  Id. at 211-14.  Once inside, Frayne and Ponds sat at the kitchen table and discussed the claim.  Id. at 206, 211.  Frayne presented Ponds with the eBay photographs and asked him to "sign and date them, indicating that they [were] a correct depiction of the damages sustained to his vehicle in the May incident."  Id. at 214-15.  Believing the photographs to be the ones he had provided in his claim, Ponds signed and dated two of the photographs.  Id. at 215.  Upon realizing the photographs were not the ones he had provided, Ponds grabbed Frayne's tape recorder, removed the tape, and threw the tape recorder to the floor.  Id. at 215-16, 239-40.  Ponds then grabbed the material from Frayne's file, which was on the table in front of Frayne.  Id. at 216-17.  Frayne reached across the table to take back the contents of his file, at which point Ponds responded "in a physical nature" by hitting Frayne with his fists and putting him in a headlock.  Id. at 217.  Frayne ended up on the floor,

where Ponds continued to beat him.  Id. at 218.

By the time Ponds stopped, Frayne was bleeding profusely from his forehead.  Id. at 219.
Ponds gave Frayne some paper towels for the blood then stood between Frayne and the door and
told Frayne that he should not attempt to leave.  Id. at 221-22.  Ponds made a phone call, and an
"older female" arrived ten to fifteen minutes later.  Id. at 222-26.  During that interval, Frayne sat
on the floor holding the paper towel to his head while Ponds stood and looked at him.  Id. at 225.
Ponds instructed the woman to take Frayne's tape recorder and file, including the photographs,
and to leave.  Id. at 224-25.  After the woman left, Ponds made another phone call, and a man and
woman arrived at Ponds's house fifteen to twenty minutes later.  Id. at 226-27.  Ponds instructed
the man not to let Frayne leave the residence and went to the garage with the female.  Id. 228.
Roughly five minutes later, Ponds reentered the house and either called the police or set off an
alarm.  Id. at 230.  Ponds and Frayne both exited the home to speak to police when they arrived.
Id. at 231.  Frayne never recovered his tape recorder or file material.  Id. at 226.

Investigator Colburn, an antifraud investigator with the Oklahoma Insurance Department,
also testified on behalf of the state.  According to his testimony, Colburn spoke to the driver of the
U-Haul, Jennifer Dreher, regarding inconsistencies in her statements about the accident.  Id. at
146-51.  Dreher reacted by crying.  Id. at 151.  Colburn then asked her about her relationship with
Ponds and whether she was afraid of him, to which Dreher became very upset and cried.  Id. at
152.  When Colburn arrested Ponds, Ponds stated, "I did the insurance thing but I didn't—I didn't
do any of the other stuff."  Id. at 157.  Ponds claimed that Frayne "came at" him.  Id. at 157-58.

In support of his argument that insufficient evidence supported his conviction, Ponds
argues that the evidence "at most" suggests that there "was an aggressive interaction but not a
robbery" and that "[t]he fact that [Ponds] himself called the police suggests he had no intent to rob

the alleged victim." Dkt. # 1, at 37 (emphasis omitted). Ponds's arguments ignore the substantial evidence of his guilt. A rational jury could infer intent from Frayne's testimony that Ponds directed an older woman to take Frayne's belongings. A rational jury further could infer that Ponds contacted police to appear less culpable, knowing that Frayne would likely contact police if he did not. In view of the evidence, the Court concludes that the OCCA's determination was neither contrary to, nor an unreasonable application of, Jackson. See 28 U.S.C. § 2254(d). A rational trier of fact could have found the essential elements of robbery by force or fear beyond a reasonable doubt from the evidence presented.

    B.  Ineffective Assistance of Trial Counsel

Ponds next argues that he received ineffective assistance of trial counsel, in violation of the Sixth Amendment. Dkt. # 1, at 39-51. Claims of ineffective assistance of counsel are analyzed under the two-pronged test established in Strickland v. Washington, 466 U.S. 668 (1984). The petitioner must first demonstrate that counsel's performance was deficient, which requires a showing "that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88. The petitioner must then demonstrate that "the deficient performance prejudiced the defense." Id. at 687. To establish prejudice, the petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. When, however, a petitioner seeks habeas relief on a claim of ineffective assistance of counsel under § 2254(d), "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105. "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Id. (citations omitted).

Respondent contends, and the record reflects, that of the fourteen separate complaints Ponds raises against his trial counsel's performance, only four were properly exhausted in state court: counsel's (1) failure to make an opening statement, (2) advice to Ponds not to testify, (3) failure to call Dreher and Ponds's mother as defense witnesses, and (4) failure to investigate phone records.[4]  Dkt. # 1, at 46-50 (Grounds II(D)(4)-(7)); Dkt. # 8, at 40; Dkt. # 8-1, at 28-30.  Ponds raised these arguments on direct appeal, and the OCCA rejected them on the merits:

> In Proposition III, [Ponds] claims he was denied the effective assistance of counsel by counsel's failure to: 1) make an opening statement; 2) put [Ponds] on the stand to deny the allegations; 3) and 4) put on any evidence or witnesses; 5) request a "stand your ground" instruction; 6) make any effort to get cell phone records of [Ponds] or his mother; and 7) request a self-defense instruction.
>
> We review [Ponds's] claims under the standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984).  In order to show that counsel was ineffective, [Ponds] must show both deficient performance and prejudice.  Goode v. State, 2010 OK CR 10, ¶ 81, 236 P.3d 671, 686 citing Strickland, 466 U.S. at 687, 104 S.Ct. at 2064.  See also Marshall v. State, 2010 OK CR 8, ¶ 61, 232 P.3d 467, 481.  In Strickland, the Supreme Court said there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional conduct, i.e., an appellant must overcome the presumption that, under the circumstances, counsel's conduct constituted sound trial strategy. Goode, 2010 OK CR 10, ¶ 81, 236 P.3d at 686.  To establish prejudice, [Ponds] must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., at ¶ 82, 236 P.3d at 686.  See also Harrington v. Richter, 562 U.S. 86, 131 S.Ct. 770, 791-792, 178 L.Ed.2d 624 (2011).  Having thoroughly reviewed [Ponds's] claims of ineffective assistance, we find he has failed to carry his burden to show either deficient performance by counsel, or prejudice from the omission of the evidence specified in the proposition.  Warner v. State, 2006 OK CR 40, ¶ 206, 144 P.3d 838, 893.
>
> Counsel's decision not to make an opening statement was reasonable trial strategy which we will not second guess on appeal.  Dawkins v. State, 2011 OK CR 1, ¶ 20, 252 P.3d 214, 220; Taylor v. State, 2000 OK CR 6, ¶ 38, 998 P.2d 1225, 1235, abrogated on other grounds by Malone v. State, 2007 OK CR 34, ¶ 22 n. 48, 168 P.3d 185, 196 n. 48.  The decision to call witnesses is also a strategic decision which

---

[4] Though Ponds also alleged on direct appeal that his trial counsel was ineffective for failing to request a "stand your ground" instruction and a self-defense instruction, Ponds did not reassert these arguments as claims in his federal habeas petition.  Dkt. # 1, at 44-51.

this Court will not second guess on appeal.  Matthews v. State, 2002 OK CR 16, ¶
32, 45 P.3d 907, 919.  However, whether a defendant will testify in his own behalf
is a decision properly left to the defendant.  Hooks v. State, 1993 OK CR 41, ¶ 36,
862 P.2d 1273, 1283.  Assuming [Ponds's] decision not to testify was influenced
by defense counsel's advice, such advice is a matter of trial strategy and will not be
considered ineffective assistance of counsel.  Id.  The record in this case shows a
knowing and voluntary waiver by [Ponds] of his right to testify.  He makes no claim
that he was forced or coerced into not testifying.  [Ponds's] absence from the
witness stand kept the details of his three prior convictions, one of which was for
robbery with a firearm, from the jury.

Any testimony by Ms. Dreher would have been relevant only to Count II,
Fraudulent Insurance Claim, as she was not present during the altercation which
formed the basis for Count I.  Further, her testimony regarding Count II, that she
backed into [Ponds's] car with the U-Haul truck and damaged it, would have been
countered by photographs of the car showing it had been damaged prior to the date
Ms. Dreher allegedly backed into it, evidence that there was no damage done to the
U-Haul truck, and [Ponds's] admission that he "did the insurance thing."  Based
upon this evidence, [Ponds] cannot show a reasonable probability that, but for
counsel's decision not to put on a case-in-chief, the result of the proceeding would
have been different.
. . . .

[Ponds] does not assert what information is contained in the omitted cell phone
records other than to argue that the phone calls were not actually made.  [Ponds]
has made no attempt to properly supplement the record with any evidence regarding
the cell phone records.  His assertion that the cell phone[] records would have been
favorable to his defense is mere speculation.  Without some indication of what
would have been on those cell phone records, [Ponds] has failed to show a
reasonable probability that if counsel had presented those records, and testimony
from [Ponds's] mother, that the result of the trial would have been different.

Defense counsel's performance in this case did not "so undermine the proper
functioning of the adversarial process that the trial cannot be relied on as having
produced a just result."  Warner, State [sic], 2006 OK CR 40, ¶ 206, 144 P.3d at
893 quoting Strickland, 466 U.S. at 686, 104 S.Ct. at 2064.  Merely because
appellate counsel may have defended the case in a different manner is not grounds
for finding trial counsel ineffective.  See Shultz v. State, 1991 OK CR 57, ¶ 9, 811
P.2d 1322, 1327.  Accordingly, we find that [Ponds] was not denied the effective
assistance of counsel.

Dkt. # 8-4, at 8-12 (footnote omitted).

1.   Failure to Make an Opening Statement

Ponds argues that trial counsel should have given an opening statement because the "theory of defense was confusing and difficult for the jury to understand," and because counsel needed to explain to the jury "that the injury to Frayne was not willful, but instead was self-defense in response to Frayne's attack."  Dkt. # 1, at 47-48 (Ground II(D)(4)).  In considering whether the omission of an opening statement prejudiced Ponds, the Court "focuses on whether the jury was able to follow [Ponds's] theory of the case absent the opening statement."  Hooks v. Workman, 606 F.3d 715, 729 (10th Cir. 2010).  It is apparent from the record that the case was not overly complex, resting primarily on the credibility of Frayne's testimony and the persuasiveness of the state's photographic evidence.  The jury was able to follow the defense's theory through counsel's cross-examination of the state's witnesses and through counsel's thorough closing argument, in which counsel addressed what he believed were the weaknesses in the state's case and advanced the theory of self-defense.  See Dkt. # 9-3, at 59-66.  Accordingly, Ponds has not shown deficient performance of prejudice flowing from counsel's omission of an opening statement.

2.   Advice to Ponds Not to Testify

Ponds contents that his counsel was ineffective for advising him not to testify and thereby preventing him from presenting "evidence of innocence" and from "contesting [his] alleged . . . confession."  Dkt. # 1, at 48 (Ground II(D)(5)).[5]  There is no indication in the record that counsel forced Ponds not to testify or that his waiver of the right otherwise was not knowing and voluntary.  To the contrary, the trial transcript reflects that Ponds verified to the trial court that he had not been

---

[5] As with several of his claims, Ponds only nominally raised this issue in his petition, providing just one sentence of argument and no citation to the record or authorities.  Dkt. # 1, at 48; see id. at 37, 46, 50-51, 67.  Ponds's petition, submitted through counsel, is not entitled to the liberal construction afforded to pleadings of pro se litigants.

threatened or coerced into his decision.  Dkt. # 9-3, at 15-20; see also Aragon v. Tafoya, 42 F. App'x 255, 257 (10th Cir. 2002) ("'[I]f counsel believes that it would be unwise for the defendant to testify, counsel may, and indeed should, advise the client in the strongest possible terms not to testify.'" (quoting United States v. Teague, 953 F.2d 1525, 1533 (11th Cir. 1992))).[6]  As to the reasonableness of counsel's advice, it was logical for counsel to assume that any benefit of Ponds's testimony would be outweighed by the damaging effect of cross-examination, particularly in view of the weight of evidence supporting his guilt.  See Strickland, 466 U.S. at 689 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"); Cummings v. Sirmons, 506 F.3d 1211, 1230 (10th Cir. 2007) (rejecting argument that trial counsel erroneously advised the defendant not to testify where "it prevented [the defendant] from being subjected to what undoubtedly would have been damaging cross-examination by the prosecution").

Further, Ponds does not adequately explain how his testimony would have rebutted the significant evidence of his guilt or how he would have persuaded the jury of his innocence despite this evidence.  United States v. Rantz, 862 F.2d 808, 811 (10th Cir. 1988) ("Because of the amount of evidence against the petitioner, this court cannot conclude that there is a reasonable probability that the result of the case would have been different had counsel permitted petitioner to testify."); Cummings, 506 F.3d at 1230 ("[W]e are unable to conclude, in light of the strong evidence of [petitioner's] guilt presented by the prosecution, that the jury could reasonably have found [petitioner's] assertions of innocence believable.").

---

[6] The Court cites unpublished decisions as persuasive authority.  FED. R. APP. P. 32.1(a); 10th Cir. R. 32.1(A).

3.   Failure to Call Any Defense Witnesses

Ponds next argues that trial counsel was ineffective for not calling witnesses on behalf of the defense, specifically Dreher or Defendant's mother.  Dkt. # 1, at 48-49 (Ground II(D)(6)). "Generally, the decision whether to call a witness rests within the sound discretion of trial counsel."  Jackson v. Shanks, 143 F.3d 1313, 1320 (10th Cir. 1998); see Boyle, 544 F.3d at 1139 ("[T]he decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney.").  The record reflects that trial counsel attempted to use Dreher's absence from trial in Ponds's favor by arguing to the jury that the state would have called Dreher as a witness if she had lied about backing into Ponds's vehicle.  See Dkt. # 9-3, at 57 ("[I]f the lessee of the UHaul didn't back into Mr. Ponds'[s] car, don't you think the [s]tate would have subpoenaed her and had her here? I didn't hear from her.")  Further, counsel was reasonable in assuming that Dreher's testimony could be damaging to the defense, given prior testimony that she had "started crying" when confronted by Colburn regarding inconsistencies in her stories and when asked if she was afraid of Ponds.  Dkt. # 9-2, at 151-52.

Counsel's decision not to call Ponds's mother to testify likewise was reasonable.  Frayne testified that the individual whom Ponds called to the house was "an older female."  Dkt. # 9-2, at 226.  When asked whether he was able to ascertain her relationship to Ponds, Frayne testified it was his "recollection that the party . . . was [Ponds's] mother."  Id.  In deciding not to call Ponds's mother to testify, counsel reasonably may have determined that the jury might discredit her testimony as tainted by her parental relationship with Ponds.  Even if the jury credited her testimony, the identity of the older woman is immaterial to Ponds's guilt.  It is unlikely the jury would have found that the mistaken recollection of a familial relationship diminished Frayne's credibility as to his testimony that Ponds called an older woman to his home and directed her to

14

take away his belongings.

For these reasons, Ponds has failed to overcome the presumption that counsel's actions constituted sound trial strategy and has likewise failed to demonstrate that the result of his trial would have been different had counsel called these two witnesses.  See Strickland, 466 U.S. at 689.

### 4.   Failure to Investigate Phone Records

Ponds claims that his trial counsel was ineffective for failing to investigate and admit phone records to show that Ponds did not call his mother or the two other individuals to his house.  Dkt. # 1, at 49-50 (Ground II(D)(7)).  Ponds's counsel, however, attempted to use the absence of this evidence in the defense's favor.  Counsel stated during closing arguments, "To meet its burden of proving this case, what should the [s]tate have brought to you that it didn't?  I'd say the first thing would be phone records.  If a year-and-a-half ago Mr. Frayne says that this gentleman in his home placed a call to somebody that might have been his mom, do you think the [s]tate police would have had the ability to pull some phone records like that?  Why didn't you hear about that? And it wasn't just one call to somebody, but it's two calls.  Why is it not there, should lead you to a great bit of concern."  Dkt. # 9-3, at 64.  Ponds's unsupported assertion that the records would have shown that he made no calls other than to the police is insufficient to overcome the presumption that counsel's strategy was sound.[7]  See Richter, 562 U.S. at 109 ("To support a defense argument

---

[7] As noted by the Respondent, and by the OCCA in its rejection of this claim, Ponds made no attempt to supplement the record in state court to establish the contents of the phone records. Dkt. # 8, at 49-50; Dkt. # 8-4, at 11-12; see Fairchild v. Workman, 579 F.3d 1134, 1145 (10th Cir. 2009) (explaining that a habeas petitioner seeking an evidentiary hearing in federal court must demonstrate diligence in his efforts to develop the factual basis for the claim in state court, which "'in the usual case,'" requires, "'at a minimum, seek[ing] an evidentiary hearing in state court in the manner prescribed by state law'" (quoting Michael Williams v. Taylor, 529 U.S. 420, 437 (2000))).

that the prosecution has not proved its case it sometimes is better to try to cast pervasive suspicion of doubt than to strive to prove a certainty that exonerates.").

In sum, Ponds has not demonstrated that the OCCA's rejection of the four above-referenced arguments of ineffective assistance of trial counsel was contrary to, or involved an unreasonable application of, Strickland, or was based on an unreasonable determination of the facts.  28 U.S.C. § 2254(d).

C.  Ineffective Assistance of Appellate Counsel

Ponds raises multiple complaints against his appellate counsel.  Dkt. # 1, at 52-74. Respondent contends that, of these, only Ground III(A)(2) and a portion of Ground III(A)(6) were properly exhausted in state court.  Dkt. # 8, at 2, 63-64.  The Court agrees, in part.  In Ground III(A)(2), Ponds alleges that appellate counsel was ineffective due to his omission on direct appeal of a request "for a new trial due to a juror on the panel not being able to speak English with any sufficient proficiency."  Dkt. # 1, at 60-61.  In Ground III(A)(6), Ponds claims ineffective assistance of appellate counsel based on counsel's failure to request an evidentiary hearing before the OCCA to supplement the record on direct appeal, instead of improperly attaching the documents in an appendix to the direct appeal brief.  Id. at 67; see Dkt. # 8-1, at 46-55.

In its order affirming the state district court's denial of his initial application for postconviction relief, the OCCA held as follows:

> We have recognized that "[c]laims of ineffective assistance of appellate counsel may be raised for the first time on postconviction, because it is usually a petitioner's first opportunity to allege and argue the issue."  Logan [v. State], 2013 OK CR 2, ¶ 5, 293 P.3d [969,] 973. Such claims are reviewed under the standard for ineffective assistance of counsel set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984).  Logan, 2013 OK CR 2, ¶ 5, 293 P.3d at 973. Under Strickland, a petitioner must show both (1) deficient performance, by demonstrating that counsel's conduct was objectively unreasonable, and (2) resulting prejudice, by demonstrating a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been

different.  Strickland, 466 U.S. at 687-89, 104 S.Ct. at 2064-65.

"[T]he burden is upon the petitioner to sustain the allegations of his petition." Russell v. Cherokee County District Court, 1968 OK CR 45, ¶ 5, 438 P.2d 293, 294.  We agree with the district court; Petitioner has failed to demonstrate that the claims that form the basis of his ineffectiveness claim have merit.  As such, the district court did not err in rejecting the ineffectiveness claim without first holding an evidentiary hearing.  See Logan, 2013 OK CR 2, ¶ 11, 293 P.3d at 975 ("An assertion of ineffectiveness of appellate counsel based upon the failure to raise a meritless claim (or meritless claims) can be summarily rejected.").  Under the circumstances presented to the district court, it was not an abuse of discretion for the court to deny relief on the ineffective assistance of appellate counsel claim." See id. ("The omission of a meritless claim . . . cannot constitute deficient performance; nor can it have been prejudicial.").  Proposition IV is denied.

Dkt. # 8-9, at 6-7 (footnote omitted).

1.  Omission of Claim Regarding Juror's Language Deficiency

"When . . . the basis for the ineffective assistance claim is the failure to raise an issue, we must look to the merits of the omitted issue."  United States v. Orange, 447 F.3d 792, 797 (10th Cir. 2006).  Here, the claim Ponds faults his appellate counsel for omitting on direct appeal—that a juror's language barrier rendered his trial fundamentally unfair—is without merit.  In postconviction proceedings, Ponds sought to support his argument with affidavits purporting to prove the juror's language barrier.  In its order denying Ponds's application, the state district court found that Oklahoma's evidence code prohibits courts from hearing "evidence relating to a juror's personal understanding of the facts and evidence, in light of [the juror's] English-language competence."  Dkt. # 8-6, at 4 (citing OKLA. STAT. tit. 22, § 2606); see Mullaney v. Wilbur, 421 U.S. 684, 691 (1975) (reiterating "that state courts are the ultimate expositors of state law" and that federal habeas courts "are bound by their constructions except in extreme circumstances").  Thus, had counsel raised the matter on direct appeal, the OCCA likely would have denied the claim due to a lack of support in the record.  See id. at 4-5; Richter, 562 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable.").

17

2.   Failure to Request Evidentiary Hearing to Supplement the Record

As an initial matter, Ponds contends that his claim faulting his appellate counsel for not properly supplementing the record was exhausted in his second application for postconviction relief. Dkt. # 1, at 67.  While the second application does contain an identical claim to Ground III(A)(6), the OCCA found all claims within the second application to be procedurally barred.  Dkt. # 8-10, at 8; Dkt. # 8-14, at 1-5; see infra section V(A).  Respondent, however, contends that Ponds's claim was exhausted in Ponds's initial postconviction proceeding, specifically within Ponds's postconviction appeal brief to the OCCA and a contemporaneously filed Rule 3.11 motion to supplement.  Dkt. # 8, at 63-65, 69-70.  Respondent argues that the claim encompasses all six of the documents attached in the appendix to Ponds's direct appeal brief, with the exception of an article concerning the trial judge.  Id. at 70 & n.20 (arguing that the article was not presented in postconviction proceedings in support of Ponds's claim of ineffective assistance of appellate counsel).  The Court questions whether the claim was properly exhausted in Ponds's initial postconviction proceeding with respect to all (or any) of the six documents.  See Dkt. # 8-5, at 17 (referencing within a separate claim appellate counsel's failure to supplement the record with his mother's affidavit and affidavits relating to a juror's alleged language barrier); see also OCCA Rule 3.11(B)(3)(b); OCCA Rule 5.2(C)(7); Knapper v. State, 473 P.3d 1053, 1068-69 (Okla. Crim. App. 2020) (denying Rule 3.11 motion because the appellant failed to discuss the evidence in his brief in chief, instead "mak[ing] a general claim in his brief in chief . . . , then go[ing] into the specific argument and details for [the] issue in his application for evidentiary hearing").  Regardless of the claim's procedural posture, the Court determines that Ponds is not entitled to relief, as the claim lacks merit even when reviewed de novo.  See Sallahdin v. Gibson, 275 F.3d 1211, 1230 (10th Cir. 2002) ("Because the State does not raise any exhaustion or procedural bar

concerns, we consider this portion of the claim on its merits, reviewing de novo.").

Regarding Ponds's mother's affidavit, Ponds's counsel cited the affidavit in Ponds's direct appeal brief in support of the claim that trial counsel was ineffective for failing to get phone records refuting testimony that Ponds called his mother on the date of the robbery. Dkt. # 8-1, at 30. In denying the claim, the OCCA noted in a footnote that "[s]imply attaching [the mother's] affidavit to the appellate brief [did] not make it part of the record for [the court's] consideration," and that Ponds had not "filed a Rule 3.11 motion to supplement the record." Dkt. # 8-4, at 11-12 n.3. Had the affidavit been properly introduced, however, there is no indication it would have altered the OCCA's determination. At trial, Frayne recalled that the older woman whom Ponds called to the house was Ponds's mother. If the jury had been presented with phone records refuting Frayne's recollection, the jury could have assumed Frayne was simply mistaken in the woman's identity. Proof that Ponds did not call his mother on the date of the crime does not refute Frayne's testimony that Ponds called an older woman to his house. Nor does it refute Frayne's testimony that Ponds grabbed his tape recorder and file material and physically assaulted Frayne when he attempted to recover the material.

On direct appeal, Ponds's counsel also attached an affidavit from the owner of an automotive body shop describing repair work he did to Ponds's Camaro. Dkt. # 8-1, at 55. The affidavit, however, provides no opinion regarding when the damage occurred or whether damage occurred on two separate occasions. Thus, there is no indication the affidavit would have altered the outcome of the direct appeal. As to the other items (affidavits from Dreher and the jury foreman, two photographs of Frayne in Ponds's home, and an article concerning the trial judge), Respondent contends that Ponds cannot show ineffective counsel for failure to supplement the record with these items because they "were already in the direct appeal record as a result of

[Ponds's] various motions for new trial." Dkt. # 8, at 70 (citing O.R. vol. I, 163-69, 178-84; O.R. vol. II, 247-52, 265-69); Dkt. # 8-1, at 46-49, 51-54. Ponds provides no argument as to why a motion seeking supplementation nonetheless was necessary under these circumstances.

For these reasons, the Court concludes that Ponds has not overcome Strickland's presumption that appellate counsel's actions were reasonable. Nor has Ponds shown that appellate counsel's failure to properly supplement the record on direct appeal was prejudicial. No relief is warranted on this claim.

D. Right to Present a Defense

Ponds submits that Investigator Colburn intimidated Jennifer Dreher into not testifying at trial, thereby violating his right to present a defense afforded under the Sixth and Fourteenth Amendments. Dkt. # 1, at 76-79 (Ground IV(A)(2)). Ponds raised this matter on direct appeal, and the OCCA denied relief on the merits:

> In Proposition II, [Ponds] asserts that Mr. Colburn, an Anti-Fraud Investigator with the Oklahoma Insurance Department, intimidated Ms. Dreher into not testifying at trial. [Ponds] claims this violated his Sixth Amendment right to present a defense as Ms. Dreher would have testified for the defense if Mr. Colburn had not threatened her with jail and never being able to get car insurance. [Ponds's] claim of a Sixth Amendment violation is different from the claim presented to the trial court, therefore our review on appeal is for plain error under the standard set forth above. See Myers v. State, 2006 OK CR 12, ¶ 27, 133 P.3d 312, 324, overruled on other grounds, Davis v. State, 2018 OK CR 7, ¶ 26, n. 3, 419 P.3d 271, n. 3.
>
> Every criminal defendant[] has a Sixth Amendment right to present a defense. Rojem v. State, 2009 OK CR 15, ¶ 9, 207 P.3d 385, 390. To determine if that right was denied by state action by interfering with a witness's decision to testify, "we ask whether the government's interference was 'substantial' . . . 'Interference is substantial when the government actor actively discourages a witness from testifying through threats of prosecution, intimidation, or coercive badgering.'" Ashton v. State, 2017 OK CR 15, ¶ 43, 400 P.3d 887, 898, citing United States v. Pablo, 696 F.3d 1280 (10th Cir. 2012).
>
> In the present case, Ms. Dreher was subpoenaed by the [s]tate to testify, and not the defense. She testified at a post-trial hearing that her failure to appear and testify at trial was due to her failure to timely check her mail and find the [s]tate's subpoena.

Ms. Dreher testified that by the time she checked her mail, the trial date had passed. She testified she was not afraid to testify and would have testified if she had received the subpoena timely. Because the [s]tate had nothing to do with whether Ms. Dreher timely checked her mail, there is no support for [Ponds'] claim that the [s]tate in any way prevented Ms. Dreher from testifying. Under the record in this case, we find no Sixth Amendment violation as the [s]tate did not interfere with [Ponds's] right to present a defense. Finding no error, we find no plain error.

Dkt. # 8-4, at 6-8 (footnote omitted).

Respondent contends that Ponds's claim is foreclosed because it is not supported by clearly established law. Dkt. # 8, at 85-86. "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." Crane v. Kentucky, 476 U.S. 683, 690 (1986) (citations and internal quotation marks omitted). This includes "the right to present a defense by compelling the attendance, and presenting the testimony, of [the defendant's] own witnesses." United States v. Serrano, 406 F.3d 1208, 1215 (10th Cir. 2005). Dreher, however, was subpoenaed by the state, rather than the defense. Dkt. # 9-9, at 42. Ponds point to no case law, let alone Supreme Court authority, providing that a defendant's right to present a defense can be violated by government interference with a government witness. Contra Webb v. Texas, 409 U.S. 95, 97-98 (1972) (holding that the defendant had been deprived due process of law under the Fourteenth Amendment when a trial judge's "lengthy and intimidating warning" and "threatening remarks, directed only at the single witness for the defense, effectively drove that witness off the stand" (emphasis added)).

Even if the Court were to assume that clearly established law proscribes the alleged intimidation of a state's witness by a government agent, Ponds has not shown that the OCCA's determination was unreasonable. Dreher's own testimony establishes that her failure to appear at

trial was due to her late receipt of the subpoena commanding her presence, not concerns evoked by Investigator Colburn.  Dkt. # 8-16, at 109-10.  For these reasons, the Court concludes that Ponds has failed to demonstrate entitlement to relief under § 2254(d) on his claim.

III.   CLAIMS NOT COGNIZABLE ON FEDERAL HABEAS REVIEW

A.  Actual Innocence

In his first ground for relief, Ponds contends that he is actually innocent of the crimes for which he was convicted.  Dkt. # 1, at 33-39 (Ground I).  Respondent asserts that actual innocence does not constitute a freestanding basis for federal habeas relief.  Dkt. # 8, at 32, 47-48.  The Court agrees that, insofar as Ponds is raising a freestanding claim of actual innocence, such a claim cannot, standing alone, entitle a petitioner to habeas relief.  See Herrera v. Collins, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."); see Farrar v. Raemisch, 924 F.3d 1126, 1131 (10th Cir. 2019) ("We have . . . held that actual innocence does not constitute a freestanding basis for habeas relief."); Sellers v. Ward, 135 F.3d 1333, 1339 (10th Cir. 1998) ("[T]he claim of innocence . . . itself is not a basis for federal habeas corpus no matter how convincing the evidence.").

B.  Erroneous Jury Instructions

In support of his actual innocence argument, Ponds submits that the trial court erred in not instructing the jury on self-defense or Oklahoma's "Stand Your Ground" law and that the appellate court erred in not permitting Ponds a new trial on this basis.  Dkt. # 1, at 38-39 (Ground I(D)(3)). This argument likewise is not cognizable on federal habeas review.  Errors in jury instructions typically are matters of state law.  See Hale v. Gibson, 227 F.3d 1298, 1324 (10th Cir. 2000) ("The

Supreme Court has stated that the argument that a jury instruction is incorrect under state law is not a basis for federal habeas relief."); Bullock v. Carver, 297 F.3d 1036, 1055 (10th Cir. 2002) ("A habeas petitioner is only entitled to relief . . . for alleged violations of federal rights, not for errors of state law.").  While improper jury instructions may be a basis for a federal due process claim, Ponds frames his argument, as he did before the state court, as a violation of state law rather than a federal due process violation.  See Dkt. # 1, at 38-39; Dkt. # 8-1, at 36-40; Dkt. # 8-4, at 12-17; Hale, 227 F.3d at 1324 (explaining that the "appropriate question on habeas review" is not whether the challenged jury instruction was incorrect under state law, but "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" (quoting Estelle v. McGuire, 502 U.S. 62, 72 (1991))).

C.  Excessive Sentence

Ponds argues that his sentences are excessive and overly punitive.   Dkt. # 1, at 80-81 (Ground V).  On direct appeal, Ponds "[did] not dispute that his life sentence [was] within the statutory range of punishment," but argued that, "due to the cumulative effect of the errors alleged in his Propositions [of Error], his sentences should be reversed or at least modified in the interest of justice." Dkt. # 8-1, at 41.  The OCCA denied relief, noting that the court "will not modify a sentence within the statutory range unless, considering all the facts and circumstances, it shocks our conscience." Dkt. # 8-4, at 15 (citing Pullen v. State, 387 P.3d 922, 928 (Okla. Crim. App. 2016)).  Ponds did not argue on direct appeal or before this Court that his sentences violated the federal Constitution.   Further, challenges to state sentencing decisions generally are not constitutionally cognizable where, as here, the sentences fell within the statutory limits.  See Dennis v. Poppel, 222 F.3d 1245, 1258 (10th Cir. 2000) ("We afford wide discretion to the state trial court's sentencing decision, and challenges to that decision are not generally constitutionally

23

cognizable, unless it is shown the sentence imposed is outside the statutory limits or unauthorized by law."); United States v. Gillespie, 452 F.3d 1183, 1190 (10th Cir. 2006) ("Generally, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment.").  Because Ponds did not invoke the federal Constitution in his argument and his sentences are within the statutory limits, his excessive sentence claim is not cognizable for federal habeas review.

IV.    PROCEDURALLY BARRED CLAIMS

As to Ponds's remaining claims, Respondent raises the affirmative defense of procedural default, arguing that the claims either were defaulted in state court on independent and adequate state procedural grounds or are unexhausted and subject to an anticipatory procedural bar.

A.    Claims Defaulted in State Court

Under the doctrine of procedural default, federal courts are precluded from "consider[ing] issues on habeas review that have been defaulted in state court on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice."  McCracken v. Gibson, 268 F.3d 970, 976 (10th Cir. 2001) (citation and internal quotation marks omitted).  "To be independent, the procedural ground must be based solely on state law."  Cole v. Trammell, 755 F.3d 1142, 1159 (10th Cir. 2014) (quoting Thacker v. Workman, 678 F.3d 820, 835 (10th Cir. 2012)).  To be adequate, a state procedural ground "must be strictly or regularly followed and applied evenhandedly to all similar claims."  Thacker, 678 F.3d at 835 (quoting Sherrill v. Hargett, 184 F.3d 1172, 1174 (10th Cir. 1999)). Where, as here, the state has pleaded the affirmative defense of a state procedural bar, "the burden to place that defense in issue shifts to the petitioner," who must, "at a minimum," provide "specific allegations . . . as to the inadequacy of the state procedure."  Hooks v. Ward, 184 F.3d 1206, 1217

(10th Cir. 1999).

In his initial application for postconviction relief, Ponds raised the claim he now asserts in Ground IV(A)(1) of his habeas petition, that he was denied a fair trial because a member of his jury did not speak English proficiently.  Dkt. # 1, at 75-76; Dkt. # 8-5, at 9-12.  The OCCA denied the claim as waived under Oklahoma's Uniform Post-Conviction Procedure Act, OKLA. STAT. tit. 22, §§ 1080-89, which precludes defendants from raising in an application for postconviction relief any claim that could have been raised on direct appeal.  Dkt. # 8-9, at 3-4 (citing Logan v. State, 293 P.3d 69 (Okla. Crim. App. 2013)); see also Fontenot v. Crow, 4 F.4th 982, 1023 (10th Cir. 2021) ("The OCCA has 'repeatedly stated that Oklahoma's Post-Conviction Procedure Act is not an opportunity to . . . assert claims that could have been raised on direct appeal.'" (quoting Rojem v. State, 925 P.2d 70, 72-73 (Okla. Crim App. 1996))).  The OCCA similarly applied Oklahoma's waiver rule to the ineffective-assistance-of-appellate-counsel claims raised in Ponds's second application for postconviction relief that had not been raised in his initial application.  Dkt. # 8-14, at 2-4.  These included the claims Ponds now raises in Grounds III(A)(1), (3), (4),[8] (5), (7) and (8) of his petition.  Dkt # 1, at 58-69; Dkt. # 8-10, at 6-8.

---

[8] Ground III(A)(4) addresses appellate counsel's "failure to move to strike the admission of a judgment and sentence to show an after-former conviction despite two counts being entirely transactional." Dkt. # 1, at 62.  Within this claim, Ponds lists twelve other purported instances of inadequate representation.  Id. at 65.  Though not clearly articulated, Ponds appears to reference the twelve issues as a means of "call[ing] into question" appellate counsel's overall abilities.  Id. at 64-66 ("More endemic to the global issues in the case, the failure to file a motion is symptomatic of a general lack of investigation, effort, or preparation to defend a client facing life without the possibility of parole.").  Ponds did not format the twelve issues as separate claims for relief within his petition or provide any analysis, argument, or supportive citations indicating he intended the Court to review the issues under § 2254(d).  Accordingly, the Court will not do so.  See Dkt. # 8, at 7-8 (Respondent arguing that, "[i]n Grounds III(A)(4)(1-1[2]), Petitioner merely lists [twelve] allegations of appellate counsel ineffectiveness, with no argument whatsoever" and that the Court should refuse to consider the issues on the merits due to inadequate briefing).

Ponds does not meaningfully challenge the independence or adequacy of Oklahoma's waiver rule, and courts have repeatedly found that the rule meets both standards. See Sherrill, 184 F.3d at 1175 ("Oklahoma's procedural rule barring post-conviction relief for claims petitioner could have raised on direct appeal constitutes an independent and adequate ground barring review of petitioner's . . . claim."); McCracken, 268 F.3d at 976. Because Grounds IV(A)(1) and III(A)(1), (3), (4), (5), (7), and (8) were defaulted in state court on an independent and adequate state procedural ground, the Court's review of these claims is foreclosed unless Ponds "can demonstrate cause and prejudice or a fundamental miscarriage of justice." McCracken, 268 F.3d at 976 (citation and internal quotation marks omitted).[9]

---

[9] Respondent also contends that the OCCA found three claims to have been waived under OCCA Rule 3.5(A)(5) for inadequate briefing. Dkt. # 8, at 26-39. These claims correspond to Grounds I(D)(3), II(D)(8), and III(A)(1) of the petition. The Court has already determined that Ground I(D)(3) is not a cognizable claim for federal habeas review. See supra section IV(B). As to Grounds II(D)(8) and III(A)(1), the Court disagrees with respondent's supposition that the claims were raised in Ponds's initial postconviction proceeding and disposed of under Rule 3.5(A)(5). Dkt. # 8, at 28. In Ground II(D)(8), Ponds contends trial counsel was ineffective for "fail[ing] to present any challenge or cross-examination regarding the alleged confession." Dkt. # 1, at 50. Ponds made passing references to his confession in his initial application for postconviction relief but did not present the issue as a distinct claim for relief, and the state district court did not address it as such. See Dkt. # 8-5, at 5-7; Dkt. # 8-6, at 4 n.2. Nor did Ponds raise the claim in his second application for postconviction relief. In Ground III(A)(1), Ponds claims appellate counsel was ineffective due to his serious illness. Dkt. # 1, at 58-60. Ponds similarly made only a passing reference in his initial application to his counsel's illness. Dkt. # 8-5, at 15 n.19. Respondent suggests this claim was raised in Ponds's Rule 3.11(B) motion to supplement the record, filed with the OCCA in conjunction with his appeal of the denial of his initial application for postconviction relief. Dkt. # 8, at 29 (citing Dkt. # 8-8). Yet, when a Rule 3.11(B) motion is predicated on an ineffective assistance of counsel claim, the claim must be properly alleged in the brief in chief. See OCCA Rule 3.11(B)(3)(b); Knapper, 473 P.3d at 1068-69. Thus, there is no indication the claim was properly exhausted in Ponds's initial postconviction proceeding. However, Ponds asserts, and the record reflects, that Ponds raised Ground III(A)(1) in his second application for postconviction relief. Dkt. # 1, at 50, 60; see Dkt. # 8-10, at 6-7. The Court addresses Ground II(D)(8) and Ground III(A)(1) herein pursuant to their respective procedural postures.

Ponds argues in a separate claim for relief (Ground III(A)(2)) that appellate counsel was ineffective for omitting a claim on direct appeal regarding the jury member's alleged language barrier.  Dkt. # 1, at 60-61.  While "[a]ttorney error amounting to constitutionally ineffective assistance of counsel constitutes 'cause' for a procedural default," Hickman v. Spears, 160 F.3d 1269, 1272 (10th Cir. 1998), the Court has already concluded that appellate counsel's omission of the claim did not constitute a violation of the Sixth Amendment under Strickland.  See supra section III(C)(1).  Accordingly, Ponds has not shown cause for his procedural default of Ground IV(A)(1) in state court.

As to Grounds III(A)(1), (3), (4), (5), (7), and (8), Ponds appears to argue that he failed to properly raise the claims in his initial application for post-conviction relief because he was proceeding pro se, "without training, and under duress due to failures of a previous counsel to file a proper [application for] post-conviction relief for him."  Dkt. # 1, at 72.  Ponds states that his "friends and family hired an attorney . . . to pursue post-conviction relief," but that the attorney "failed in her contractual duties" to submit a filing, thereby forcing Ponds to write the brief.  Id. at 72-73.  "There is no constitutional right to an attorney in state post-conviction proceedings," however.  Coleman v. Thompson, 501 U.S. 722, 752 (1991).  Nor can proceeding pro se in postconviction proceedings constitute cause for a procedural default.  "Cause" must be "something external to the petitioner, something that cannot fairly be attributed to him . . . ."  Id. at 753; Steele v. Young, 11 F.3d 1518, 1522 (10th Cir. 1993) (observing that the petitioner's "status as a pro se petitioner and his deficiencies in reading and writing skills" were "not external factors" and, thus, could not constitute cause for the petitioner's default in state court).

B. Claims Subject to an Anticipatory Procedural Bar

Respondent contends that Ponds's remaining claims are subject to an anticipatory

procedural bar.  "'Anticipatory procedural bar' occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it."  Moore v. Schoeman, 288 F.3d 1231, 1233 n.3 (10th Cir. 2002).  The claims at issue include Ground I(D)(2), in which Ponds claims he was improperly denied a new trial based on purportedly exculpatory photographs, Grounds II(D)(1)-(3), (8)-(14), in which Ponds raises various claims of ineffective assistance of trial counsel, and Ground IV(A)(3), in which Ponds claims cumulative error deprived him of a fair trial.  Dkt. # 8, at 51-52.  Ponds does not meaningfully contest respondent's assertion that these claims are unexhausted.  He broadly criticizes the state courts for not liberally construing his initial application for postconviction relief but fails to show that any of the above-referenced claims were even nominally raised, much less raised in a manner sufficient to put the state courts on notice of the claims.  Dkt. # 16, at 18; see Prendergast v. Clements, 699 F.3d 1182, 1184 (10th Cir. 2012) ("[T]he crucial inquiry is whether the 'substance' of the petitioner's claim has been presented to the state courts in a manner sufficient to put the courts on notice of the federal constitutional claim.").

As noted, Oklahoma bars claims in postconviction proceedings that could have been raised previously on direct appeal but were not, as well as claims raised in subsequent postconviction proceedings that could have been raised in the initial application for postconviction relief.  See Davis v. Sharp, 943 F.3d 1290, 1296 (10th Cir. 2019).  Accordingly, if Ponds were to return to state court to present the proposed claims, the state courts would find them procedurally barred.  Though a petitioner can overcome a procedural bar by demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law," Ponds has failed to make this showing.  Coleman, 501 U.S. at 750.  Ponds points to his appellate attorney's serious health condition as cause for the defaults on direct appeal.  Dkt. # 16, at 19, 25-26.  Yet, "an ineffective-

assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted." Edwards v. Carpenter, 529 U.S. 446, 453 (2000). Because the relevant claims of ineffective assistance of appellate counsel were not raised until Ponds's second application for postconviction relief, they cannot serve as cause to overcome the default. Ponds then points to his own pro se status as cause for the defaults in his initial postconviction proceeding. Dkt. # 16, at 17-19. As noted, however, his pro se status cannot constitute cause for the defaults because cause must be something external to the petitioner.[10] See Coleman, 501 U.S. at 753.

C. Actual Innocence Exception

Because Ponds has failed to demonstrate cause and prejudice for the procedural default of his claims, Ponds must establish that the Court's failure to review his claims would result in a fundamental miscarriage of justice. This requires a credible showing of factual innocence. See Hickman, 160 F.3d at 1275. "To be credible, a claim of actual innocence requires a petitioner to present 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" Fontenot, 4 F.4th at 1031 (quoting Schlup v. Delo, 513 U.S. 298, 324 (1995)).

Ponds submits in his reply brief that the Court should "disregard any procedural bars" because Ponds is innocent of the crimes for which he was convicted. Dkt. # 16, at 23. Ponds does not support this argument, however, with new reliable evidence. Elsewhere in his reply brief and his petition, Ponds references purportedly "exculpatory" photographs showing Frayne near his file

---

[10] Ponds also points to the failure of his retained postconviction counsel to make a filing, which required Ponds to proceed pro se in his initial application for postconviction relief. Dkt. # 16, at 18-19 (arguing that Ponds "frantically did his best to write effective pleadings and submit his first [application for postconviction relief]" after discovering his retained counsel had failed to do so). There is no indication, however, that this circumstance prevented Ponds from raising the unexhausted claims in the eighteen-page brief he submitted to the state district court.

and drinking water provided to him by Ponds.  Dkt. # 16, at 10, 12; Dkt. # 1, at 37, 55; see Dkt. # 8-5, at 35-36.  Even if the Court were to consider the evidence for purposes of the actual innocence exception to procedural default, the photographs do not provide credible evidence of innocence. Evidence that Frayne at one point stood near his files in no way refutes Frayne's testimony that Ponds later grabbed the files and called a woman to his home to remove them.[11]   Accordingly, Ponds has not demonstrated actual innocence necessitating the Court's review of his defaulted claims.

V.   CONCLUSION

Based on the foregoing, the Court denies the petition for a writ of habeas corpus (Dkt. # 1).  Under Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate of appealability may issue only upon "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack v. McDaniel, 529 U.S. 473,

---

[11] The Court additionally notes that Ponds previously presented the photographs in state court in a motion seeking a new trial.  Dkt. # 9-10, at 51-56.

484 (2000). The Court concludes that the requisite standards have not been met in this case and therefore declines to issue a certificate of appealability.

        **ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. the Clerk of Court shall note on the record the substitution of Randy Harding in place of Scott Crow as party respondent;

2. the petition for writ of habeas corpus (Dkt. # 1) is **denied**;

3. Ponds's request for an evidentiary hearing is **denied**;

4. a certificate of appealability is **denied**; and

5. a separate judgment shall be entered in this matter.

**DATED** this 21st day of March, 2024.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE